**FILED & ENTERED**

MAR 04 2014

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY egarcia    DEPUTY CLERK

# NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No. 2:09-bk-28606-PC |
| JAYAMPATH P. DHARMASURIYA, | Chapter 7 |
| | **MEMORANDUM DECISION** |
| | Date: March 3, 2014 |
| | Time: 9:00 a.m. |
| Debtor. | Place: United States Bankruptcy Court |
| | Courtroom # 1468 |
| | 255 East Temple Street |
| | Los Angeles, CA 90012 |

Before the court is the motion of Jeffrey I. Golden, Chapter 7 Trustee ("Golden") seeking approval of a proposed settlement between Golden and Defendants, Malkanthi Wedage, individually and as trustee of the Malkanthi Wedage Revocable Living Trust dated September 28, 2005 (collectively, "Wedage"); 507 Broad Avenue, LLC; 2030 El Segundo Blvd, LLC; 13802 Cerise Ave, LLC; and 1342 West 251st LLC (collectively, the LLC Defendants") of the disputed claims between the parties pending in Adversary No. 12-ap-02087-PC, <u>Golden v. Wedage, et al</u>, pursuant to FRBP 9019.[1]  Peter Edirisinghe ("Edirisinghe"), a creditor holding

---

[1] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse

1

unsecured non-priority claims against the estate in excess of $2.4 million, objects to the proposed compromise. No other creditor or party in interest, including the United States trustee, has filed a response in opposition to the relief requested in Golden's motion. The court, having considered the pleadings, evidentiary record, and arguments of counsel, makes the following findings of fact and conclusions of law pursuant to F.R.Civ.P. 52(a)(1), as incorporated into FRBP 7052 and applied to contested matters in bankruptcy cases.

## I.  STATEMENT OF FACTS

On October 8, 2012, Golden commenced the above referenced adversary proceeding seeking to avoid as fraudulent certain transfers of the Debtor's alleged interest in 13 properties and to recover each of the transfers for the benefit of the estate. The transfers at issue involve the following properties:

- **2517 W. 54th St., Los Angeles, CA 90043.** On November 21, 2000, Wedage took title as a single woman.
- **1607 W. Redondo Beach Blvd., Gardena, CA 90257.** On December 17, 2001, Wedage took title as a single woman to a 50% tenant in common interest.
- **1342 &1344 251st St., Harbor City, CA 90710.** On December 20, 2001, Wedage took title as a single woman.
- **1127 N. Wilmington Blvd., Los Angeles, Ca 90744.** On June 26, 2003, Wedage took title as a single woman.
- **2301 W. Cameron St., Long Beach, CA 90810.** On May 28, 2004, Wedage took title as a single woman.
- **1201 Myrtle Ave., Inglewood, CA 90301.** On September 27, 2004, Wedage took title as a single woman.
- **1131 Alta Loma Rd., No. 324, West Hollywood, CA 90069.** On January 4, 2005, Wedage took title as a single woman.
- **13442 Cerise Ave & 3507 W. 135th St., Los Angeles, CA 90250.** On March 8, 2005, Wedage took title as an unmarried woman.
- **706-708 W. 78th St., Los Angeles, CA 90044.** On March 25, 2005, Wedage took title as an unmarried woman.
- **100 E. Buckthorn St., Inglewood, CA 90301.** On April 22, 2005, Wedage took title as an unmarried woman.

---

Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005). "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("F.R.Civ.P."). "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR").

- **13115 S. Penrose Ave., Compton, CA 90222.** On November 14, 2006, Wedage took title as an unmarried woman.
- **2030 W. El Segundo Blvd., Gardena, CA 90249.** On March 7, 2008, Wedage took title as an unmarried woman.
- **13802 Cerise Ave., Hawthorne, CA 90250.** On May 27, 2008, Wedage took title as an unmarried woman.

Wedage is the Debtor's spouse. Wedage denies that the Debtor owned a community property interest in any of the subject properties on the petition date as a result of their marriage. Wedage claims, among other things, that each of the subject properties was acquired and held by her as separate property pursuant to a premarital agreement executed between the Debtor and Wedage on September 6, 1989. She also denies that any community funds were used to acquire an interest in any of the properties. She further claims that, after acquiring each of the properties, she transferred the properties to the Malkanthi Wedage Revocable Living Trust dated September 28, 2005, and later from the trust to one or more of the LLC Defendants. At no time did the Debtor have an interest in any of the properties, according to Wedage.

The adversary proceeding between the parties has been pending for 16 months. The discovery deadline, as extended, expired on April 30, 2013. By order entered on February 19, 2013, the court set the adversary proceeding for trial to commence on July 24, 2013. On that date, the parties had exchanged witness lists, exhibits and trial briefs, and were ready for trial. However, the court continued the trial date to November 5, 2013; and again thereafter, in part, to permit Golden, Wedage and the LLC Defendants to engage in final settlement discussions and a mediation before Honorable Sheri Bluebond, United States Bankruptcy Judge.

On October 15, 2013, Wedage and the LLC Defendants filed a motion seeking the imposition of sanctions in the form of attorneys' fees and costs in excess of $126,992 against Golden and his counsel pursuant to FRBP 9011. Wedage and the LLC Defendants argue that the claims made the basis of Golden's complaint lack evidentiary support and are not warranted by existing law; and further, that Golden and his counsel continued to prosecute the adversary proceeding after having been requested by Wedage and the LLC Defendants to dismiss. On October 24, 2013, Golden and his counsel responded seeking a denial of the motion on both substantive and procedural grounds.

3

Trial of the adversary proceeding ultimately was set for March 3, 2014. After five days of mediation with Judge Bluebond, the parties reached a resolution of all disputed claims asserted between the parties in the adversary proceeding.

Under the terms of the proposed settlement, Wedage, on behalf of herself and as trustee of the trust, and the LLC Defendants, collectively, will, upon entry of an order approving the compromise, pay the sum of $50,000 to Golden and withdraw the motion for sanctions pending against Golden and his counsel. In consideration therefor, Golden will withdraw the lis pendens on the subject properties, the parties will exchange mutual releases, and the adversary proceeding will be dismissed as to Wedage and the LLC Defendants with prejudice.[2]

## II. DISCUSSION

This court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b). Golden's motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (H) and (O). Venue is appropriate in this court. 28 U.S.C. § 1409(a).

### A. Standard for Approval of Compromise Under FRBP 9019

On a motion by the trustee after notice and a hearing, the court may approve a compromise or settlement under FRBP 9019(a) upon a finding that it is "fair and equitable" to creditors. Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988); Martin v. Kane (In re A&C Props.), 784 F.2d 1377, 1381 (9th Cir. 1986), cert. denied sub. nom. Martin v. Robinson, 479 U.S. 854 (1986). The trustee has the burden of persuading the court that the compromise is fair and equitable and is in the best interests of the estate. A&C Props., 784 F.2d at 1381; CAM/RPC Elecs. v. Robertson (In re MGS Mkg.), 111 B.R. 264, 266-67 (9th Cir. BAP 1990). In Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414 (1968), the Supreme Court stated that "[t]here can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further,

---

[2] The adversary proceeding would remain pending against the only remaining Defendant, Jayani Manikkage, who did not participate in the mediation and is not a party to the proposed compromise.

the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." Id. at 424. However, the bankruptcy court need not conduct an exhaustive investigation nor a mini-trial on the validity or merits of the claims sought to be compromised. See, e.g., U.S. v. Alaska Nat'l Bank (In re Walsh Constr., Inc.), 669 F.2d 1325, 1328 (9th Cir. 1982); In re Schmitt, 215 B.R. 417, 423 (9th Cir. BAP 1997). The court's proper role is "to canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness." In re Drexel Burnham Lambert Group, Inc., 134 B.R. 493, 496-97 (Bankr. S.D.N.Y. 1991).

In determining the fairness, reasonableness and adequacy of a proposed settlement, the Ninth Circuit has directed the court to consider: "(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." Woodson, 839 F.2d at 620 (quoting A&C Props., 784 F.2d at 1381). However, "while creditors' objections to a compromise must be afforded due deference, such objections are not controlling . . . ." A&C Props., 784 F.2d at 1382. The court may give weight to the opinions of the trustee, the parties, and their attorneys. Port O'Call Inv. Co. v. Blair (In re Blair), 538 F.2d 849, 851 (9th Cir. 1976). A court generally should give deference to a trustee's exercise of business judgment. In re Mickey Thompson Entm't Group, Inc., 292 B.R. 415, 420 (9th Cir. BAP 2003). Consideration must also be given to the principle that the law favors compromise and not litigation for its own sake. Blair, 538 F.2d at 851. Finally, Wedage is an insider as that term is defined in § 101(39). 11 U.S.C. § 101(39); see In re Schuman, 81 B.R. 583, 585 (B.A.P. 9th Cir. 1987). Insider status is not fatal to approval of a compromise under FRBP 9019, but such dealings are subject to a higher level of scrutiny. In re HyLoft, Inc., 451 B.R. 104, 113 -14 (Bankr. D.Nev. 2011).

B. <u>Probability of Success on the Merits</u>

With respect to probability of success on the merits, the court must estimate both the value of the proposed settlement and the likely outcome of litigating the claims proposed in the settlement. <u>In re Telesphere Commc'ns, Inc.</u>, 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994). Golden believes the probability of success on the merits is "good," but maintains that the compromise should be approved because of the uncertainty, substantial costs, and difficult issues that must be faced in the litigation.[3] Golden asserts that the administrative burden of fees and costs through litigation of the adversary proceeding to judgment would be substantial, and "exacerbated by any appeal."[4] In light of the issues discussed in the parties' respective trial briefs, victory in Golden's view is by no means assured for the estate.

First, Wedage's claim that the Debtor had no community property interest in any of the subject properties hinges on the validity and scope of the premarital agreement. Golden asserts that the premarital agreement is not valid or enforceable. He has also objected to the admissibility of the agreement at trial. Even if the Golden was successful in convincing the court to exclude the premarital agreement, Golden would still have the burden of establishing that each of the subject properties was acquired by the Debtor and Wedage as community property or by Wedage with funds of the community estate notwithstanding language of each deed to the contrary. There is a presumption that each property at issue is separate property because record title to each property expressly states that Wedage owns the property as a "single" or "unmarried" individual.[5]

---

[3] Motion to Approve Compromise Pursuant to Federal Rule of Bankruptcy Procedure 9019, 4:21-22.

[4] <u>Id.</u>, 4:24-25.

[5] In California, there is a presumption that property is held by the owner as declared on title unless it is rebutted by clear and convincing evidence. <u>See</u> Cal. Evid. Code § 662; <u>see also</u> Cal. Fam. Code § 2581(a) and (b). Pursuant to Cal. Fam. Code § 2581, the California presumption of community property is rebutted by either (a) a clear statement in the deed or other evidence indicating that the property is separate property; or (b) proof that the parties have made a written agreement that the property is separate property.

6

Main Document    Page 7 of 10

Second, Golden has the burden of proof on other disputed issues identified in his trial brief, including: (1) whether the Debtor received value in exchange for the direct or indirect transfers that benefitted Wedage; (2) whether the transfers were done with the actual intent to hinder, delay or defraud a creditor; (3) whether the Debtor received reasonably equivalent value in exchange for each of the subject transfers; (4) whether the Debtor was insolvent at the time of each transfer, or rendered insolvent as a result of the transfer; and (5) whether Wedage intended to defraud creditors by representing herself to be single or unmarried in each of the deeds by which she acquired and then transferred each of the subject properties.

Finally, Wedage has asserted that avoidance of one or more of the subject transfers is barred by applicable statutes of limitations and that Golden's complaint itself is time barred. Given these facts, it is possible the trustee could expend significant amounts of money in pursuing this adversary through trial and ultimately recover nothing for the estate. This factor weighs in favor of approving the proposed compromise.

B. Difficulties to Be Encountered in the Matter of Collection

Even if successful on the merits through any appeal of a favorable judgment at trial, Golden would still be compelled to incur further administrative expenses in the form of additional attorneys' fees and costs to collect the judgment. Approval of the compromise eliminates the estate's exposure to liability stemming from the disputed sanctions motion and results in an immediate payment of $50,000 to the estate in settlement of the disputed claims with no additional collection costs. This factor weighs in favor of approving the compromise.

C. Complexity of the Litigation, Inconvenience, Delay, and Expense

The complexity of the litigation, the continuing expense of the litigation, and the delay attendant to the litigation all weigh in favor of approving the compromise. Golden has already expended significant resources to investigate the estate's claims and to prepare for trial. The proposed compromise is the result of months of settlement negotiations, including at least five days of mediation before Judge Bluebond in which the parties considered each of the disputed issues, and weighted the strengths and weaknesses of Golden's claims and the defenses thereto. Not only has there been delay in the trial of this adversary proceeding, but the Debtor has been in

bankruptcy since 2009. Golden acknowledges that, if the settlement is not approved, a trial will be costly, time consuming, result in additional litigation expenses, and further delay a final administration of the Debtor's bankruptcy estate. Golden has a statutory responsibility to administer the estate as expeditiously as is compatible with the best interest of creditors. He believes in the exercise of his business judgment that the proposed settlement is the best possible result under the circumstances.

D. <u>Paramount Interest of Creditors</u>

Golden believes that the proposed settlement is in the best interest of all creditors of the estate in that it will end the disputed litigation, stop the accrual of administrative expenses associated with the litigation, eliminates the estate's exposure to liability stemming from the disputed sanctions motion, and result in an immediate payment of $50,000 to the estate. According to the motion, Golden did not reach this conclusion lightly. The proposed compromise is the product of months of good faith negotiation that considered all evidence and issues that would have been litigated at trial.

In his objection, Edirisinghe argues that $50,000 is insufficient and far from equitable to creditors. Edirisinghe raises a number of issues in his objection that are not relevant to Golden's motion and the proposed compromise because the facts are outside the scope of the claims made the basis of Golden's complaint in the adversary proceeding. Edirisinghe claims that he has not seen the premarital agreement between the Debtor and Wedage. However, a copy of the premarital agreement has been on file with the court since July 17, 2013, attached as Exhibit A to Wedage's Trial Brief. [Adv. Dkt. # 59]. Edirisinghe further claims that there is "substantial evidence" that the Debtor and Wedage "are not, in fact, husband and wife;" that the alleged premarital agreement should therefore not apply; and that "the properties assigned to Wedage are not community property."[6] But it is undisputed that at all material times the Debtor and Wedage were married. Moreover, Edirisinghe's counsel conceded at oral argument that the estate would recover nothing in the adversary proceeding if it was established that the transfers sought to be

---

[6] Response/Opposition to the Motion to Approve Compromise of Controversy Between Chapter 7 Trustee and Malkanthi Wedage, the Wedage Trust and Various LLCs, 2:19-21; 9:14-15.

avoided by Golden involved the separate property of Wedage rather than the community property of the Debtor and Wedage. Finally, it is not necessary for the trustee to prove the validity or invalidity of claims and defenses in conjunction with approval of a compromise under FRBP 9019. As previously stated, the bankruptcy court need not conduct an exhaustive investigation nor a mini-trial on the validity or merits of the claims sought to be compromised. See Walsh Constr., Inc., 669 F.2d at 1328.

Edirisinghe admits in his objection that "[m]uch investigation and discovery has been conducted by the Trustee and creditors into whether the Estate has a direct or indirect interest in dozens of properties," but believes that "additional investigation should be undertaken with regard to the true value of the Estate."[7] At oral argument, however, Edirisinghe's counsel was unable to identify any specific disputed issue involved in the litigation upon which additional discovery was necessary or should have been undertaken by the trustee. In response to questions by the court, Edirisinghe's counsel conceded that no further discovery was necessary because all relevant evidence was already in the hands of the trustee. Edirisinghe's concern boils down to the absence of an analysis by the trustee of the equity in each of the properties identified in Golden's complaint, i.e., the value of each property less the amount of liens, taxes and other encumbrances asserted against the property. While such information might be helpful to the court and creditors in assessing the merits of a settlement, it is not essential to a finding that the proposed compromise is fair and equitable.

The court will approve the compromise. Approval of the compromise resolves the claims of Golden, Wedage, and the LLC Defendants arising out of the multiple transfers of the 13 properties identified in Golden's complaint, eliminates the estate's exposure to liability stemming from the disputed sanctions motion, results in an immediate payment of $50,000 to the estate without further collection costs, and circumvents the accrual of administrative expenses associated with the continued litigation of disputed claims in the adversary proceeding. The trustee believes that the settlement is fair and equitable, and in the best interest of the creditors and the estate. The court has weighed the four Woodson factors, given deference to the trustee's

---

[7] Id., 2:11-12; 10:11-13.

business judgment, and determined based on the facts of the case that the proposed settlement is fair and equitable and does not fall below the lowest point in the range of reasonableness.

### III. CONCLUSION

For the reasons stated, Edirisinghe's objection to Golden's motion will be overruled and the proposed compromise will be approved as fair and equitable and in the best interests of creditors and the estate pursuant to FRBP 9019.

A separate order will be entered consistent with this memorandum decision.

###

Date: March 4, 2014

Peter H. Carroll
United States Bankruptcy Judge